UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MICHAEL CATSIGIANNIS,

                           Plaintiff,

      -against-

MICHAEL J. ASTRUE as Commissioner of the
SOCIAL SECURITY ADMINISTRATION,

                           Defendant.
------------------------------------------------------------- x

**MEMORANDUM & ORDER**

08-CV-2177 (ENV) (LB)

**VITALIANO, D.J.**

Plaintiff Michael Catsigiannis seeks review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under the Social Security Act (the "Act".) The parties agree that the decision of the administrative law judge ("ALJ") denying Catsigiannis benefits contains multiple legal errors and cannot stand. They disagree, however, as to the ultimate disposition. The Commissioner argues that the record before the Court does not compel a conclusion that Catsigiannis was disabled during the relevant period and urges the Court to remand for further proceedings before a different ALJ. Catsigiannis argues that substantial evidence supports a finding of disability and asks the Court to reverse and remand solely for the purpose of calculating benefits. For the reasons stated below, defendant's motion is granted with conditions and plaintiff's cross-motion is denied. The decision of the ALJ is reversed and the case is remanded for further administrative proceedings before a different ALJ, to be completed within 60 days of this Order's entry on the Court's docket.

1

## Background

Catsigiannis's tale of woe begins on November 6, 1993, when, as he testified, he fell off of a ladder while working. (Tr. 49.) Between November 7, 1993 and October 8, 1996, Catsigiannis was examined or treated by a total of nine doctors. (Kelly Decl. 4-9.) Although the facts are not in dispute, the Court reviews them here in substantial detail in order to provide context for its discussion.

On November 7, 1993, the day after his fall, Catsigiannis went to Bridgeport Hospital in Connecticut, where he was diagnosed with a spinal fracture. (Tr. 189-91.) Two days later, upon referral from Dr. Arthur P. Kojes, his chiropractor, plaintiff was evaluated by Joel Cohen, M.D., a neurologist, who assessed the pain as indicative of lumbar radiculopathy. (Tr. 195.) He also diagnosed paraspinal muscle spasms and post-concussive headaches. (Id.) On November 15, 1993, Catsigiannis was next evaluated by Marc M. Silverman, M.D., an orthopedist, who concluded his patient had post lumbar strain. (Tr. 266.)

On January 18, 1994, Catsigiannis returned to Dr. Cohen for a follow-up evaluation. (Tr. 196.) He found that plaintiff was primarily symptomatic of a L4-5 radiculopathy. (Id.) On March 7, 1994, Catsigiannis was seen by P. Manolas, M.D. (Tr. 197), who concluded that plaintiff was totally disabled. (Id.) Around this time, Catsigiannis also saw Andreas N. Neophytides, M.D., who stated that plaintiff could not return to his prior employment or any kind of heavy, manual activity because of the possibility of worsening his condition. (Tr. 198.) On September 15, 1994, Catsigiannis was evaluated by Joel Eisenberg, M.D., an orthopedic surgeon, who diagnosed strain of the cervical and lumbar spine and assessed that plaintiff's prognosis was good. (Tr. 496-97.) Dr. Eisenberg reported that plaintiff's impairment should be minimal in the future, and that "he should be able to get back to work within six months." (Id.) On the other hand, on October

6, 1994, Catsigiannis was also evaluated by John L. Xethalis, M.D., who concluded that plaintiff was totally disabled. (Tr. 214.)

A few months later, on February 16, 1995, Catsigiannis was evaluated by Eric Garver, M.D. (Tr. 104-06, 399-402). He found in similar fashion that plaintiff was unable to perform his regular painting or construction work, but that he "could work at a sedentary, light duty type activity." (Tr. 106, 400, 402.) On March 15, 1995, Dr. Kojes reported that Catsigiannis had progressed under the then present course of treatment but had "a permanent disability." (Tr. 225.) On April 25, 1995, Catsigiannis met with Henry M. Rubinstein, M.D., an orthopedic surgeon. (Tr. 241-43.), Dr. Rubinstein was "pessimistic" that Catsigiannis would be able to return to his previous line of work, but that he might be able to work in some sort of unspecified light duty job. (Id.)

The evaluation and treatment parade marched on. On October 8, 1996, Paul Lerner, M.D., reported that Catsigiannis returned to his office for reexamination. He concluded that plaintiff "continues to appear to be totally disabled from his injuries." (Tr. 206.) On December 10, 1998, Dr. Garver recommended that plaintiff undergo cervical discectomy and fusion (Tr. 107), a procedure not without significant invasiveness and risk.

On April 21, 1999, Catsigiannis was seen by Raphael Cilento, M.D., a consulting neurosurgeon who concluded that he was totally disabled and that his prognosis was "very hopeless." (Tr. 159.) On June 3, 1999, Dr. Cilento stated Catsigiannis would require continual supervision seven days per week for at least twelve hours per day for the rest of his life, and that he needed a home attendant. (Tr. 144.) On September 27, 1999, David B. Brown, M.D., an orthopedic surgeon, concluded, on the other hand, that Catsigiannis was capable of returning to work after receiving vocational rehabilitation, but that should avoid any job requiring repetitive

bending or heavy lifting or climbing ladders. Dr. Brown did not believe plaintiff had any significant traumatic brain injury. (Tr. 238-40.) On November 10, 1999, Dr. Garver examined Catsigiannis and reported that he had a 25% permanent disability in the cervical spine. (Tr. 387.)

The millennium brought no change. On January 13, 2000, Catsigiannis was again examined by Dr. Cilento. (Tr. 165-68.) Dr. Cilento reported that plaintiff had a total and permanent disability and characterized his prognosis as "extremely grave." (Tr. 167.) On March 22, 2000, plaintiff began mental health treatment with Paul C. Ladopoulos, M.D. (See Tr. 246,) who assessed that Catsigiannis was totally disabled. (Tr. 245-46.) On March 29, 2000, James E. Finn, M.D., examined plaintiff and reviewed an MRI of the lumbar spine. He concluded that plaintiff did not need lumbar surgery. (Tr. 234-35.)

At this point in the chronology—December 29, 2000—Catsigiannis applied for disability insurance benefits alleging that he had been disabled since November 6, 1993, due to slipped disks in his upper and lower back, neck surgery, numbness in his hands and legs and psychological problems. (Kelly Decl. 1; Tr. 64-67.)

On September 25, 2001, Catsigiannis appeared before ALJ Marilyn P. Hoppenfeld for what would be the first of two hearings . (Compl. ¶5; Tr. 26-59.) At this 2001 hearing, Dr. Langman testified that, prior to December 1997, plaintiff was able to walk for no more than 45 minutes at a time, stand for a maximum of one hour at a time, twice per day, sit for 20 minutes at a time, and lift five pounds. (Tr. 55.) In a letter dated September 10, 2001, Dr. Langman assessed that Catsigiannis was totally and permanently disabled and could perform no work. His prognosis was "guarded." (Tr. 232.)

Matters would soon come to a head. On January 25, 2002, ALJ Hoppenfeld issued a decision in which she found that Catsigiannis was not disabled because he was able to perform

sedentary and light work. (Tr. 9-19.) Ten months later, on October 18, 2002, the Appeals Council affirmed her determination. (Compl. ¶ 5.) Catsigiannis then filed a civil action in this Court (Catsigiannis v. Commissioner, CV-03-0108 (JG)), which, on February 10, 2004, resulted in a remand for further proceedings. (Tr. 565-67.) Consequently, on June 8, 2004, the Appeals Council vacated the ALJ's decision and a subsequent remand for further administrative proceedings, including a de novo hearing. (Tr. 570-75.)

The hearing on remand before ALJ Hoppenfeld was set for August 4, 2005. (Tr. 744-91.) Dr. Langman and Donald Goldman, M.D., a medical expert, appeared. They testified that plaintiff was totally disabled. (Tr. 744-45.) Andrew Pasternak, a vocational expert, also testified. (Id.)

On March 20, 2006, despite testimony to the contrary by Langman and Goldman, ALJ Hoppenfeld issued a decision finding that plaintiff was not disabled because he was able to perform sedentary and light work prior to June 30, 1997. (Tr. 538-53.) On April 5, 2008, the Appeals Council affirmed ALJ Hoppenfeld's decision, rendering it final. (Tr. 531-34.) This action followed.

## Standard of Review

Section 405(g) of the Act empowers district courts to review a disability decision of the Commissioner and affirm, reverse, or modify that decision, "with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004.) A district court reviewing the Commissioner's decision to deny disability benefits must "determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts, 388 F.3d at 384 (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

After reviewing the Commissioner's determination, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." Butts, 388 F.3d at 384 (quoting 42 U.S.C. § 405(g).) "Remand for further development of the evidence is appropriate where there are gaps in the administrative record or the ALJ has applied an improper legal standard." Kirkland v. Astrue, No. 06–CV–4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008) (citing cases).

## Discussion

Catsigiannis claims that his November 6, 1993 accident rendered him severely and irremediably disabled and unable to engage in any substantial gainful activity within the meaning of the Act. (Compl. ¶ 9.) ALJ Hoppenfeld ruled otherwise, finding that Catsigiannis had the residual functional capacity to perform "a full range of light and/or sedentary" work prior to June 30, 1997, and thus denied his benefits claim. (Tr. 543-44, 551-52.) She specifically found that plaintiff could "lift/carry up to 20 pounds occasionally and 10 pounds frequently," and that he could sit "for six hours in an eight hour day; walking and standing for two hours and lifting ten pounds occasionally." (Tr. 551-52.) In support of her findings, Judge Hoppenfeld set forth a list of hypothetical jobs cited by the vocational expert that someone fitting plaintiff's vocational profile would be capable of performing and are theoretically still obtainable in a modern technology-driven economy. (Tr. 552.)

As Catsigiannis argues here, and as the Commissioner admits, the "ALJ failed to adequately consider and evaluate evidence concerning plaintiff's condition during the relevant period." (Kelly Decl. at 20.) Though the record contains many reports from Dr. Cilento, who first examined plaintiff in 1999, the ALJ did not specifically address any of these reports, stating that the evidence from 1999 and 2000 was too remote in time to consider with respect to the relevant period. (Tr. 548-51.) However, Dr. Cilento's numerous reports state that the November 6, 1993 accident was the proximate cause of Catsigiannis's health problems, and that plaintiff had been having nocturnal seizures since 1996, (Tr. 137, 140, 144, 148, 152, 154, 157, 159, 168), both dates within the relevant period. Dr. Ladopoulos's retrospective opinion that plaintiff had been totally disabled since November 6, 1993, (Tr. 292-93), was also wholly ignored by the ALJ. ALJ Hoppenfeld also failed to address the opinions of other physicians from the relevant period, including Dr. Lerner, Dr. Xethalis, and Dr. Manolas, who all indicated, during the relevant period, that plaintiff was totally disabled, (Tr. 197, 204-06, 493-94.) Because a treating physician's retrospective opinions may be probative, Valerio v. Commissioner of Soc. Sec., 2009 WL 2424211 at *14 (E.D.N.Y. 2009), this Court agrees with the parties that ALJ Hoppenfeld erred in not evaluating, at the very least, Dr. Cilento's and Dr. Ladopoulous's reports and opinions.

Harmony ends there. The parties contest, and it is no insignificant matter, whether the case should be remanded for a full rehearing in front of a different ALJ, or remanded solely for the calculation of benefits. A remand for a rehearing is appropriate when "further findings would so plainly help to assure the proper disposition of the claim." Butts, 388 F.3d at 385. Relatedly, where an ALJ fails to adequately evaluate evidence concerning plaintiff's condition during the relevant period, thus disobeying the requirement to develop the record, full remand for

further proceedings by the Commissioner is appropriate. See, e.g., Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to give 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."); Anderson v. Astrue, 2009 WL 2824584 (E.D.N.Y. 2009) (holding that full remand is appropriate when the ALJ used a "pick and choose" approach in determining which doctors' opinions she would heed and which ones she would not without providing explanation.) However, where courts have found "no apparent basis to conclude that a more complete record might support the Commissioner's decision, [they] have opted simply to remand for a calculation of benefits." Id. at 385-86.

Though a district court has discretion to do so, remanding solely for the calculation of benefits is considered an "extraordinary action," Rivera v. Barnhart, 423 F.Supp.2d 271, 279 (S.D.N.Y. 2006), and if the court cannot say "with certainty what weight should be assigned . . . to the opinion[s] of plaintiff's treating physician[s], or whether further clarification of the record . . . might alter the weighing of evidence," a full remand is appropriate. Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998); see also, Johnson v. Bowen, 817 F.2d 983 (2d Cir. 1987) (reversing N.D.N.Y. decision to remand solely for calculation of benefits because the record could possibly support a denial of benefits once explored more fully.) Indeed, "[i]t is for the SSA, and not [a] court, to weigh the conflicting evidence in the record." Schaal, 134 F.3d at 504.

Finally, the Court is aware of the fact that Catsigiannis has been waiting many years for a complete and properly evaluated determination of his eligibility for disability benefits, and that long delays can cause uncertainty and turmoil in the lives of claimants. However, absent sufficient substantially unequivocal evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits. See Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996.) Though delay alone is not a sufficient ground for remand solely to calculate benefits, this Court

may soften the protracted delay of a full remand by imposing a reasonable time limit on the Commissioner's decision. See Butts, 388 F.3d at 387 (2d Cir. 2004) (instructing the district court to direct that further proceedings before an ALJ be completed within 60 days of the issuance of the district court's order and, if that decision is a denial of benefits, a final decision of the Commissioner be rendered within 60 days of plaintiff's appeal from the ALJ's decision.) In addition to imposing a time limit, the Court may require that the Commissioner designate a new ALJ to consider plaintiff's case. See Kolodnay v. Schweiker, 680 F.2d 878, 879-80 (2d Cir. 1982) (upholding remand to different ALJ after original ALJ failed to consider entire medical record); Ocasio v. Barnhart, No. 00-6277, 2002 WL 485691, at *10 (E.D.N.Y. March 28, 2002) (remanding to new ALJ due to animosity between plaintiff's attorney and original ALJ); Hartnett v. Apfel, 21 F. Supp. 2d 217, 223 (E.D.N.Y. 1998) (remanding to new ALJ when original ALJ mischaracterized and misunderstood evidence and failed to consider record with adequate care.)

Here, upon review of the record, the Court cannot say that assigning appropriate weight to Catsigiannis's treating physicians there is but one result the law allows. Therefore, full remand is necessary. At the same time, it is manifest that the failure of the ALJ to consider the entire record in her two determinations, including after a prior remand ordered by a judge of this Court—a mistake underscored by the unusual agreement of the parties for reversal—makes the assignment of a new ALJ on remand more than appropriate. Finally, in light of the lengthy elapse of time since the initial filing for benefits, fairness and justice requires prudent remand be with direction for expedited consideration. Accordingly, the decision by the new ALJ is to be entered within 60 days of the entry of this Order on the docket and, if that decision is a denial of benefits, a final decision of the Commissioner be rendered within 60 days of plaintiff's appeal from the ALJ's decision. Given the development of the facts over the course of two hearings, good faith

stipulation of the existing evidentiary material will expedite record development and ensure that a determination will be made within the time limits set by this Court.

## Conclusion

For the foregoing reasons, the determination of the Commissioner to deny Castigiannis disability benefits is reversed and the matter remanded for further proceedings before a different administrative law judge consistent with this Memorandum and Order.

So Ordered.

Dated: Brooklyn, New York

May 18, 2013

s/ ENV

ERIC N. VITALIANO

United States District Judge